MARIE B. STEVENS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stevens v. Commissioner
Docket No. 6752-82.
United States Tax Court
T.C. Memo 1984-365; 1984 Tax Ct. Memo LEXIS 307; 48 T.C.M. (CCH) 531; T.C.M. (RIA) 84365; July 17, 1984. Edward R. Joyce, for the petitioner. James A. Kutten, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency of $3,072.00 in income *308 tax due from petitioner in 1977. The only issue is whether damage to petitioner's residence constituted a casualty loss under section 165(c)(3). [1]
Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by reference. Marie B. Stevens resided in St. Louis, Missouri, when she filed the petition in this case. For 1977, she filed a joint return with her husband, John K. Stevens, now deceased. The return was filed with the Internal Revenue Service Center at Kansas City, Missouri. On April 11, 1979, petitioner filed an amended 1977 income tax return claiming a casualty loss of $10,590 with respect to her house. Respondent disallowed the loss in its entirety. Petitioner and her husband had purchased the house located at 5461 Childress Avenue, St. Louis, Missouri, in 1959. The house had been built about 1932, and was structurally sound and exhibited no settlement problems until early 1977. In March of 1977 cracks appeared in the interior walls and ceiling of *309 the house. Retaining walls pulled away from the foundation, some interior walls separated from each other and deep cracks of one to two inches in width appeared in the driveway near the house. Petitioner's husband contacted E.F. David, Inc., an engineering firm concerning the damage. In a letter dated March 19, 1977, Lloyd M. David, an engineer employed by E.F. David, Inc., agreed to inspect and evaluate the structural condition of the house. At the trial, Lloyd M. David was called as a witness by petitioner. He is a registered professional engineer with a degree in civil engineering and has specialized for 38 years in the correction of building failures with particular emphasis on underpinning and shoring. He has repaired or corrected hundreds of building failures in his career. He testified that at Mr. Stevens' request he inspected the house and its damage in March of 1977 to determine the cause and to determine what could be done to prevent further damage. From his inspection he determined that the damage was caused by the fact that the footings on which rested the foundation walls of the house had pulled away from the foundation walls which permitted the house to settle. *310 This in turn put stress on the remainder of the building and caused the damage to the interior walls and ceiling. He stated that in his opinion (1) the footings had pulled away from the foundation walls because of the contraction of the clay soil on which the footings rested, and (2) the clay soil contracted because of a loss of moisture which occurred during the drought in the area during 1976 and 1977. Mr. David also testified that from his experience the damage caused in this manner could happen suddenly (over a very short period) or over as much as two years depending upon how suddenly the footings collapsed. In August of 1978, Mr. David agreed to correct the foundation of the house for $7,500. This work consisted of underpinning the foundation with piers resting on bedrock and was designed to prevent further settling in the future. It did not include any repair to the interior walls and ceiling. It was almost all below ground level. At trial, Robert C. Mueller, a real estate appraiser, testified that he had thoroughly examined the property and in his opinion the fair market value of the property before the damage caused by the settling was $60,000 and that the fair market *311 value of the property after the damage was $49,500. We found Mr. Mueller to be a credible witness and well qualified to render an opinion as to the value of the property. For the year of 1976, Missouri's precipitation level was 13.77 inches lower than normal and in September of 1976, Missouri was declared a disaster area due to drought. The area qualified for federal relief funds as well as disaster loss treatment under section 165(h) for the 1976 taxable year. The drought continued into 1977, the precipitation level being 2.88 inches lower than normal in April of that year. Section 165(a) allows a deduction for losses sustained during the taxable year which are not compensated for by insurance or otherwise. However, section 165(c)(3) limits such losses for individuals to "[l]osses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft." [2] The legislative policy behind section 165(c)(3) is "to allow the deduction only of those losses which may be considered extraordinarily, nonrecurring losses, and which go beyond the average or usual losses incurred by most taxpayers in day-to-day living." S. *312 Rept. No. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 505, 561. Petitioner's loss admittedly did not arise from fire, storm, shipwreck or theft. Therefore, to qualify for a deduction under section 165(c)(3) the petitioner must establish that the damage to her house resulted from some "other casualty." The phrase has been held to denote "an accident, a mishap, some sudden invasion by a hostile agency; it excludes the progressive deterioration of property through a steadily operating cause." . The loss must be an identifiable event which must be sudden in the sense of being swift or precipitous rather than gradual or progressive. . However, the term "sudden" is comparative and each case must turn on its own facts. , affd. ; , affd. ; *313 . Over the years there have been several cases where a loss occasioned by a severe drought was held to constitute a casualty within the meaning of section 165(c)(3). In , the District Court held that an unprecedented and unusual drought was a casualty within the meaning of section 23(e)(3) of the Revenue Act of 1936, the predecessor of section 165(c)(3), and that the resulting loss could be deducted. Deductions were also allowed under section 165(c)(3) on similar facts in Winters v. United States, an unreported case ( USTC par. 9205), revd. on other grounds , cert. denied , and Pantzer v. United States, an unreported case ( USTC par. 9641). in , revg. and remanding on other grounds , the Tenth Circuit held that where taxpayers suffered the loss of trees *314 and shrubs on their residential grounds as the result of a severe drought and the "casualty loss having been established by the special verdict of the jury * * * it is deductible under Section 165 * * *." Furthermore, in a factual situation which is almost identical to that under consideration, we held that taxpayers who suffered structural damage to their house as a result of the loss of moisture content in the subsoil due to drought were entitled to a casualty loss deduction. . There, we found that "the Charno residence, which formerly evidenced no structural damage, sustained sudden and extensive damage due to differential settlement in the fall of the year, immediately following the dry months of spring and summer * * *." P-H Memo. T.C. par. 71,022, at 112-71. Likewise, on the particular facts of this case, we conclude that petitioner is entitled to deduct her loss under section 165(c)(3) because the undisputed facts clearly demonstrate that in the months preceding the damage the area suffered a drought so severe that it was declared a national disaster, cracks suddenly developed *315 in the foundation, walls and ceiling of petitioner's house, and as a result of the damage petitioner suffered a diminution in value of her house in the amount of $10,500. [3] The shrinkage in soil and the resulting damage to the house took place over a short period of time and was not a progressive or gradual deterioration. The damage was relatively rapid, i.e., sudden. See ; ;. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, during the year in issue unless otherwise indicated.↩
2. Such losses are allowable only to the extent that they exceed $100 for each casualty.↩
3. On the amended return, petitioner claimed a diminution in value of $10,590 and a deduction of $10,490 after the $100 exclusion provided by section 165. However, from the proof we have found that the diminution in value was only $10,500.↩